JAMES MATTHEWS *et al. v.* BLOUNT CO. & J. S. THOMAS.

1. CONSTITUTIONAL LAW. The act of March 18, 1875, entitled "An act to enable old counties from which fractions have been taken to form new counties, to appoint tax assessors for said fraction and to collect taxes therein," is constitutional.

2. CHANCERY PRACTICE AND PLEADINGS. *Averments of bill must be specific.* Bill alleging irregularities in the issue of bonds to a Railroad Company, should point out specifically such irregularities to call attention of the defendants to them and advise them of what they are to defend or explain.

---

FROM LOUDON.

---

Appeal from the Chancery Court of Loudon. O. P. TEMPLE, Ch.

PRICHARD, ROGERS and WELCKER for complainants.

McGINLEY, HOOD, CATES and ROWAN for defendants.

TURNEY, J., delivered the opinion of the court.

The first question presented by the bill is as to to the constitutionality of the act of the Legislature, passed March 18, 1875, entitled "An act to enable old counties from which fractions have been taken to form new counties, to appoint Tax Assessors •for said fraction and to collect taxes therein." The preamble to this statute is, "Whereas, by article 10, sec. 4, of the Constitution of the State of Tennessee, it is provided, that the fractions taken from old counties, in the formation of new counties, or taken from one county and

added to another, shall continue liable for their pro rata of all debts contracted by their respective counties prior to the separation, and to be entitled to their proportion of any stocks or credits belonging to such old counties, therefore to the end that said old counties may be better enabled to assess and collect taxes in the fractions taken from them, where such fractions are subject to such taxation by law."

The first section of the act provides for the appointment by the County Court of the old county, of a special tax assessor from the citizens of the old county, or in case there is one tax assessor only for the old county, it shall be. his duty to assess all the taxable property and polls within the territory embraced in the fraction, etc. * * * And the tax collector or collectors of said old counties shall proceed to collect the taxes so assessed in said fractions as if said fractions were integral parts of the old counties for which they were appointed or elected tax assessors.

Section 3 provides, that the provisions of this act shall not apply to any other than railroad taxes, nor in any case when judicial proceedings are pending to ascertain the amount for which said new counties or fractions thereof are liable to the old counties, until said judicial proceedings are determined.

The county of London was formed and organized under the Constitution of 1870, and of course subject to its ordinances.

The act of March 18, 1875, is simply an enabling act to article 10, sec. 4, of the Constitution, and is intended to furnish a remedy for the enforcement of

the rights defined and declared by it. Its passage was, therefore, not only within the power of the Legislature, but strictly within the line of its duty.

In this bill there is no allegation that at the time of the effort to collect railroad taxes, judicial proceedings were pending to ascertain the amount for which the "Blount fraction" of Loudon county is liable to Blount county, therefore the allegation, "that there has never been a settlement between the county of Blount and the said Blount fraction for the purpose of ascertaining the amount," etc., is immaterial, and presents no issue that the courts are authorized to inquire of.

The statute expressly and in terms providing that such proceedings must be pending at the time of the undertaking to collect, unless such proceedings are so pending it is the duty of the collector, as prescribed by the statute, to collect the taxes due from the fraction as if there had been no separation from the old county.

By virtue of the act it is the duty of the County Court of the old county to provide for the appointment of a tax assessor—of the assessor to assess the taxes, and of the collector to collect. Nor is it in any way provided that the tax payers of the fraction shall have a voice in the choice of either assessor or collector, or the levying of the taxes. The levying, assessing and collecting must be done as if the old county were at the time entire, and the rate of taxation must be uniform.

The broad allegation, that "in the subscription of said stock and in the issuance of said bonds, there

are many gross irregularities, which as between the tax payers of the Blount fraction and Blount county should stand as a complete barrier to the collection of any such tax by said county," furnishes no information to the parties sued, of the grounds of complaint against them. Such irregularities should have been specifically pointed out in a way to call the attention of the defendants to them and advise them of what they were invited to defend or explain. This comprehensive charge performs no part of the office of pleading and cannot be regarded by the courts.

The same answer meets the allegation, "That said stock was subscribed by the people of Blount county upon certain conditions, stipulated and positively and pointedly set forth in the orders of the County Court of Blount county, in the acts of the Legislature of the State authorizing the subscription and issuance of the bonds, and finally set forth and referred to in the face of the bonds themselves." Such conditions and stipulations and their breaches should have constituted a part of the allegation.

It is alleged in this connection, "That should there be a failure to construct said Knoxville & Charleston Railroad through Blount to Knoxville, then the county subscription of Blount county shall be void. This condition will be found fully and explicitly set out in the orders of the court, in the statutes authorizing the subscription and the issuance of the bonds, and is referred to on the face of the bonds and made part of the same. * * * That this condition has never been complied with," etc.

This allegation is intended to give to the language, "through Blount county to Knoxville," a literal meaning, and is not meant to convey the idea that the road does not in reality run through Blount county, as we judicially know that it does run from the county seat of Blount county to Knoxville.

The several charges in the bill, to the effect that the bonds are void in the hands of their holders, because their faces show the conditions and limitations by which they were guarded in their issuance, can avail nothing in this suit, for the reason that the holders are not before the court.

The same rule obtains in relation to the charges against the railroad officials as to their conduct and use in the appropriation and disposition of the bonds.

It is charged that about the year 1854, the County Court of Blount county issued bonds to the amount of $120,000, in payment of a county subscription to K. & C. Railroad. That said bonds remained in the hands of said County Court uncalled for by the R. R. Co. until 1865, when by an order of the County Court the bonds were burned and the county thus returned *statu quo.*" "Afterwards, about the year 1867, a heavy pressure was brought upon the County Court by R. R. Co. for the re-issuance of said bonds." * * " That the County Court did issue bonds to the amount of $120,000, believing it was bound to do so, and the same were turned over to R. R. Co."

This latter action of the County Court is charged to be illegal.

From these allegations it appears the county was

Matthews *v.* Blount Co.

indebted by its subscription in the sum of $120 000; that the County Court, under authority of law, prepared bonds for the payment of the debt; that it retained instead of paying out the bonds because they were not called for, and not being called for the County Court ordered them to be cancelled by burning. Did this destruction of the bonds extinguish the debt, looking to the allegations of the bill? We think not. The people of the county, pursuing a legislative direction and authority, had contracted the debt; this being done, it was the duty of the County Court to issue the bonds as the statute provided. This being done, its authority was ended. The debt having been legally created must be paid, the burning was an unauthorized act. The re-issue was a compliance with the duty imposed by law upon the court. The destruction of the first bonds by the order of the tribunal that ordered their issuance, left the matter in precisely the condition as if no such bonds had been in fact prepared in the first instance. The demurrer should have been sustained.

Reverse the decree and dismiss the bill.